MARY SEMPLE *v.* MAYOR AND ALDERMEN OF VICKSBURG.

MUNICIPAL CORPORATION. *Liability for acts of its employees. Negligence in constructing sewer.*

In one of the streets of the city of Vicksburg there is a sewer into which empty many inlets, some from privies and others from private yards and disconnected with any privies. The stench from the sewer having become very offensive to the citizens, the board of mayor and aldermen ordered the privy inlets to be closed. The agent employed to· carry out this order, by negligence or inattention, closed an inlet running from Mrs. S.'s house and not connected with any privy, in consequence of which the water from her house back-flowed and greatly damaged her premises. She sued the city for the damage to her property. At the trial, the court below excluded all of the plaintiff's evidence, and the verdict and judgment were in favor of the defendant. *Held,* that the defendant is liable for such injury, upon the principle that a municipal corporation is liable for the acts of its workmen in constructing gutters, sewers, and drains where those acts are purely ministerial, involving the exercise of no governmental powers or judicial functions.

APPEAL from the Circuit Court of Warren County.

HON. RALPH NORTH, Judge.

A statement of the case will be found in the opinion of the court.

*A. M. Lea,* for the appellant.

It is submitted that Stanton, the workman whose negligent and improper conduct is complained of, was the *agent* and *servant* of the city, and that the doctrine of *respondeat superior* applies.

The application of this doctrine to municipalities is discussed at length in the third edition of Dillon on Municipal Corporations, § 974 *et seq.*

That the work of closing up these inlets was a *corporate* work, and that the city was responsible for the manner of its execution, see *Rochester White Lead Co.* v. *Rochester,* 3 N. Y. 463 ; *Delmonico* v. *City of New York,* 1 Sanford 222 ; *Barton* v. *Syracuse,* 36 N. Y. 54; *Kobs* v. *Minneapolis,* 22 Minn. 159 ; *Emery* v. *Lowell,* 104 Mass. 13 ; *City of Montgomery* v. *Taylor,* 33 Ala. 116 ; *City of McGregor* v. *Boyle,* 34 Iowa 268; Wharton on Negligence, § 262; 2 Thompson on Negligence, § 742; Wood's Master and Servant, pp. 915–917.

Opinion of WAGNER, Judge, *Thurston* v. *City of St. Joseph*, 51 Mo. 517.

" The work of constructing gutters, drains, and sewers is *ministerial*, and when, *as is usually the case*, the undertaking is a *corporate* one, the corporation is responsible in a civil action for damages caused by the *careless* or *unskillful* manner of performing the work." Dillon, § 1049, see also §§ 1048, 1050, 1051.

It is contended that Stanton, in closing up this particular drain, did "what he was not employed to do." But it must be borne in mind that the act was done while he was attempting to carry out the city's instructions. It is not to be inferred that the act was prompted by malice, but rather that he was acting *bonâ fide* in the mistaken idea that he was carrying out his master's behests. It was simply an *unskillful* and *negligent* performance of the work intrusted to him.

" The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it was done in the prosecution of business that the servant was employed by the master to do." Court of Appeals N. Y., in *Cosgrove* v. *Ogden*, 49 N. Y. 255, and to same effect, *Smith* v. *Webster*, 23 Mich. 298 ; *Luthel* v. *Hazen*, 3 Sneed (Tenn.) 20.

The attention of the court is asked to *Nims* v. *The Mayor of Troy*, 59 N. Y. 550, for the facts of that case are much like those here and the reasoning of the court is applicable.

" It is clearly to be inferred by the court, from the evidence, that the city government, by its official representative, had full notice of all that was done by Teson, and the manner in which the changes had been made. * * * Even if it was not expressly authorized to be done in advance of changes actually made, a *payment* for the work *implies* a knowledge of what was done, and is an *adoption* of the entire action of Teson."

Here it will be remembered that the chairman of the street committee, a member of the board of aldermen, had supervision of Stanton's work, and, it must be presumed, knew exactly what was

done. With this knowledge, thus brought home to the city, Stanton's bill for this work is audited and *paid*.

*Birchett & Gilland*, for the appellees.

The doctrine of *respondeat ouster* does not apply to municipal corporations in cases like this one. Municipal corporations, when exercising public duties which they owe to all alike and from which the corporation derives no special benefit or advantage, are not responsible for the negligence of the agents employed by them to perform these public duties.

Says the court, in *Condict* v. *Mayor, etc.,* 16 Vroom (N. J.): "In the execution of the duties of a municipal government the services of inferior officers having only ministerial duties to perform and of workmen and other employees are required for the transaction of its business, and the principle on which the cases above cited were decided would be of little importance if the municipality was liable to actions for the negligence of such persons. It has been held that with respect to such officers and employees the doctrine of *respondeat superior* does not apply."

A city is not responsible for the wrongful acts of its police officers in the enforcement of ordinances. *Buttrick* v. *City of Lowell*, 1 Allen (Mass.) 172 ; *Calwell* v. *City of Boone*, 51 Iowa 687.

Nor for the negligence of its officers and agents in executing sanitary regulations for preventing the spread of contagious diseases. *Ogg* v. *City of Lansing*, 35 Iowa 495 ; *Brown* v. *Vinalhaven*, 65 Maine 402.

Nor for the negligence of the members of its fire department, though employed and paid by the city. *Jewett* v. *New Haven*, 38 Conn. 368 ; *Smith* v. *Rochester*, 76 N. Y. 506–513 ; *Hafford* v. *New Bedford*, 16 Gray 297 ; *Fisher* v. *Boston*, 104 Mass. 87 ; *Howard* v. *San Francisco*, 51 Cal. 52 ; *Hayes* v. *Oshkosh*, 33 Wis. 314.

A town is not liable for an injury sustained by reason of the negligence of a laborer employed by one of its highway surveyors to aid him in performing the duties of his office. *Walcot* v. *Swampscott*, 1 Allen 101.

Nor is a city liable for an injury caused by the negligence of a

teamster employed in transporting stone to repair a highway by the superintendent of streets. *Barney* v. *Lowell*, 98 Mass. 570.

See especially the reasoning of the court on the proper distinction which is drawn in *Condict* v. *Mayor*, 16 Vroom (N. J.), and *Hayes* v. *Oshkosh*, 33 Wis. 314.

. Where a city, acting within its general powers, contracts for the grading of a public street, and, in accordance with the conditions of the contract, the work is done under the immediate supervision of certain officers, whose duty it is to superintend the work, and the damages result—*not from any negligence of the contractors*, but from the performance of the work *in the manner required by the contract* —the city is liable for such damages. *Sewall* v. *St. Paul*, 20 Minn. 511.

The contrary proposition is inferred and must be true—that if the damage had occurred from the negligence of the contractors and not from the plan of the work, the city would not have been liable.

CHALMERS, J., delivered the opinion of the court.

Washington Street, in the city of Vicksburg, was permeated throughout its length by a culvert or sewer, into which there ran various inlets from privies on the sides of the street, and also one or more inlets from private yards disconnected from the privies. The citizens being annoyed by the obnoxious stenches arising from the sewer, the board of mayor and aldermen, in 1879, passed the following ordinance :

"On motion, the chairman of the street committee is instructed to have all privy inlets to sewers hermetically sealed, also to ascertain if traps can be made available for shutting out all odors emanating from the sewer."

Said chairman employed one Stanton to close said privy inlets. By the negligence or inattention of Stanton, he closed up the inlet running from Mrs. Semple's house to the sewer instead of that leading from her privy, in consequence of which the water leading from the house was dammed up and flooded, whereby her house was greatly damaged ; for which injury she brings this suit.

The court below, on motion of defendant, excluded all the testimony, it being shown that Stanton afterward received payment from the city for the work done, though it was not shown that the city knew of his negligence and by its payment ratified it. The action of the court was based upon the idea that a municipal corporation is not liable, even for the negligence of its employees and servants, while engaged in a public work which the city per-- forms for the public at large, and from which the corporation derives no pecuniary profit nor expects to do so. There are undoubtedly many cases holding this doctrine, which are noticed and commented on in 2 Dillon on Municipal Corporations (3d edition), § 775 *et seq.*, and authorities cited.

We prefer not to involve ourselves in the mazes of these decisions, but rather to confine ourselves to the point before us.

It is quite universally held that a municipal corporation is liable for the acts of its workmen in the work of constructing gutters, drains, and sewers, where those acts are purely ministerial, involving the exercise of no governmental powers or judicial functions. An almost unbroken array of authorities fix the liability in cases like these. This principle seems decisive of the present case. The action of the mason here in closing up the inlets was purely mechanical, and the city in ordering it was exercising no governmental function whatever. The closing up of the inlet flowing from the house, instead of that flowing from the privy, proceeded ·clearly from forgetfulness or inattention, and to such an act the doctrine of *respondeat superior* must be applied. 2 Dillon on Municip. Corps., § 1049 *et seq.; Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 483; *Delmonico* v. *City of New York*, 1 Sanford 222; *Barton* v. *Syracuse*, 6 N. Y. 54; *Kobs* v. *Minneapolis*, 22 Minn. 159; *Emery* v. *Lowell*, 104 Mass. 13; *City of Montgomery* v. *Taylor*, 33 Ala. 116; *City of MacGregor* v. *Boyle*, 34 Iowa 268; Whart. on Neg., § 262; 2 Thomp. on Neg., § 742; Wood's Master and Servant, pp. 915, 917.